UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RYAN LESSEM and DOUGLAS JOHNSON,

                                  Plaintiff(s),

v.

JAYCEON TERRELL TAYLOR p/k/a THE GAME, UMG RECORDINGS, INC., UNIVERSAL MUSIC GROUP, INC., INTERSCOPE RECORDS, INC., LASTRADA ENTERTAINMENT COMPANY, LTD., SONY/ATV MUSIC PUBLISHING, LLC, UNIVERSAL MUSIC CORPORATION, WARNER CHAPPELL MUSIC INC., MUSIC OF WINDSWEPT, BLACK WALL STREET RECORDS, LLC and BLACK WALL STREET PUBLISHING, LLC

                                    Defendant(s).
------------------------------------------------------------------X

Civil Action No. 07 CV 10601

Honorable Louis L. Stanton

**PLAINTIFFS' RESPONSE TO UMG DEFENDANTS' RULE 56.1(a) STATEMENT**

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, Plaintiffs Ryan Lessam ("Lessam") and Douglas Johnson ("Johnson")(collectively "Plaintiffs"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck, P.C., respectfully submit the following response to Windswept Holdings, LLC d/b/a Music of Windswept, UMG Recordings, Inc., Interscope Records, a Division of UMG Recordings, Inc. and Universal Music Publishing, Inc. (collectively "UMG Defendants") statement of undisputed material facts pursuant to Fed. R. Civ. P. 56 and respond as follows:

Plaintiff objects to Defendants 56.1 Statement a

    **A. The Creation of Plaintiff's Song**

    1.    Plaintiffs admit the statement made by the UMG Defendants in paragraph 1.

    2.    Plaintiffs admit the statement made by the UMG Defendants in paragraph 2.

    3.    Plaintiffs admit the statement made by the UMG Defendants in paragraph 3.

4. Plaintiffs deny the statement made by the UMG Defendants in paragraph 4. Lessam contributed ideas and input for the beat and added a new kick and other effects to Plaintiffs' song "Elevator." (Transcript of the deposition of Douglas Johnson ("Johnson Tr.") pg., 101:9-11, 103:16-23, attached to the Declaration of Gary Adelman ("Adelman Decl.") as Exhibit C )[1]. Plaintiffs together independently created and produced Plaintiffs' song. (Adelman Decl. ¶ 10)

5. Plaintiffs admit the statement made by the UMG Defendants in paragraph 5.

6. Plaintiffs admit the statement made by the UMG Defendants in paragraph 6.

7. Plaintiffs admit the statement made by the UMG Defendants in paragraph 7.

8. Plaintiffs admit the statement made by the UMG Defendants in paragraph 8.

**B. The Creation of UMG Defendants' Song**

9. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 9. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 9, as they were not present during that process.

10. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 10. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 10, as they were not present during that process.

11. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 11. Plaintiffs do not have knowledge and

---

[1] Plaintiffs hereby respectfully refer the Court to the Declaration of Gary Adelman accompanying Plaintiff's Motion for Summary Judgment and the Exhibits attached thereto ("Adelman Decl."). The Adelman Decl. is hereby fully incorporated herein.

information concerning the composing, writing and recording process described in paragraph 11, as they were not present during that process.

12. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 12. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 12, as they were not present during that process.

13. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 13. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 13, as they were not present during that process.

14. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 14. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 14, as they were not present during that process.

15. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 15. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 15, as they were not present during that process.

16. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 16. Plaintiffs do not have knowledge and information concerning 50 Cent's understanding of the phrase described in paragraph 16.

17. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 17. Plaintiffs do not have knowledge and information concerning 50 Cent previously hearing the phrase described in paragraph 17.

18. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 18. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 18, as they were not present during that process.

19. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 19. Plaintiffs do not have knowledge and information concerning the composing, writing and recording process described in paragraph 19, as they were not present during that process.

**C. The How We Do Writers Never Had Access to Plaintiffs' Song**

20. Plaintiffs admit the statement made by the UMG Defendants in paragraph 20.

21. Plaintiffs admit the statement made by the UMG Defendants in paragraph 21.

22. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 22. Plaintiffs cannot conceivably have knowledge and information as to whether the How We Do Writers had heard of the Plaintiffs prior to the dispute underlying this lawsuit.

23. Plaintiffs admit the statement made by the UMG Defendants in paragraph 23.

24. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 24, as they were not present at times that the How We Do Writers may have received or heard Plaintiffs' song "Elevator." However, the similarity of the songs at issue and the factual circumstances involving Chauncey Pope p/k/a Che

Pope ("Pope") strongly suggest that the "How We Do Writers" heard Plaintiff's song at some point before composing and recording "How We Do."

      25.     Plaintiffs admit the statement made by the UMG Defendants in paragraph 25.

      26.     Plaintiffs admit the statement made by the UMG Defendants in paragraph 26.

      27.     Plaintiffs admit the statement made by the UMG Defendants in paragraph 27.

      28.     Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 28.  Plaintiffs were not privy to the creation, recording, production process of "How We Do."

      29.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 29 and object to the affidavit of Pope because it is self-serving.  It is quizzical that Pope does not remember ever meeting either of the Plaintiffs, although he met Lessam at Sam Ash several times. (Adelman Decl. ¶ 21, Lessam Tr., p. 164:22-24; see also Sam Ash sales order receipts, Adelman Decl. Exhibit F; Adelman Decl. ¶ 23, Lessam Tr., p. 185:4-6.)  Furthermore he met both Lessam and Johnson at the Chung King recording studio (Adelman Decl. ¶ 26, Lessam Tr., p. 173:4-174:4. Johnson Tr., p. 47:15-18).  Lessam on several occasions played Plaintiffs' music to Pope. (Adelman Decl. ¶ 21, Lessam Tr., p. 164:22- 165:2)

      30.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 30 and object to the affidavit of Pope because it is self-serving.  Lessam recalls sending music to Pope in the mail.  (Adelman Decl. ¶ 27, Lessam Tr., p. 171:5-7.)

      31.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 31. Lessam recalls sending music to Pope in the mail. (Adelman Decl. ¶ 27, Lessam Tr., p. 171:5-7.)

32. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 32. Plaintiffs were not privy to Pope's interactions with the How We Do Writers.

33. Plaintiffs admit the statement made by the UMG Defendants in paragraph 33.

34. Plaintiffs admit the statement made by the UMG Defendants in paragraph 34.

35. Plaintiffs deny the statement made by the UMG Defendants in paragraph 35. With respect to paragraphs 35 to 37, Plaintiffs note that while they do not recall the dates or specifics as to when they played "Elevator" to Pope or when a copy of the song was sent to him, Plaintiffs indeed remember that "Elevator" was one of the songs that they played for and sent to Pope.

36. Plaintiffs deny the statement made by the UMG Defendants in paragraph 36. With respect to paragraphs 35 to 37, Plaintiffs note that while they do not recall the dates or specifics as to when they played "Elevator" to Pope or when a copy of the song was sent to him, Plaintiffs indeed remember that "Elevator" was included that they played for and sent to Pope.

37. Plaintiffs deny the statement made by the UMG Defendants in paragraph 37. With respect to paragraphs 35 to 37, Plaintiffs note that while they do not recall the dates or specifics as to when they played "Elevator" to Pope or when a copy of the song was sent to him, Plaintiffs indeed remember that "Elevator" was included that they played for and sent to Pope.

### D. The Similarities Between Plaintiffs' Song and the UMG Defendants' Song Allegedly Constitute Commonplace Expression

38. Plaintiffs deny the statement made by the UMG Defendants in paragraph 38.

39. Plaintiffs deny the statement made by the UMG Defendants in paragraph 39. [2]

40. Plaintiffs deny the statement made by the UMG Defendants in paragraph 40. (Johnson Dep., 121:1-14.). Notwithstanding the foregoing Plaintiffs admit that the phrase "this is how we do it" existed in urban vocabulary prior to Johnson writing the lyrics of the song "Elevator.

41. Plaintiffs deny the statement made by the UMG Defendants in paragraph 41 because the wording of the statement seems unintelligible and not understandable as written.

42. Plaintiffs admit the statement made by the UMG Defendants in paragraph 42.

43. Plaintiffs deny the statement made by the UMG Defendants in paragraph 43.

44. Plaintiffs lack sufficient knowledge and information to either admit or deny the statement made by the UMG Defendants in paragraph 44. It cannot be quantified what "approximately" is. How can you deny or admit an approximation?

45. Plaintiffs deny the statement made by the UMG Defendants in paragraph 45. Harrington did not admit that, "The Phrase…".

46. Plaintiffs deny the statement made by the UMG Defendants in paragraph 46, as it calls for a legal conclusion.

47. Plaintiffs deny the statement made by the UMG Defendants in paragraph 41 because the wording of the statement seems unintelligible, because as written it could mean different things and is therefore improper for a 56.1 Statement.

48. Plaintiffs deny the statement made by the UMG Defendants in paragraph 48.

---

[2] With respect to the similarities of the songs (and the choruses) Plaintiff's refer to their additional statements in paragraphs 73 to 85 herein.

49. Plaintiffs deny the statement made by the UMG Defendants in paragraph 49. Experts report visual exhibit "C", page 12 #56, Occurrences, states: Repeatedly in Chorus and not as the Defendant states.

50. Plaintiffs admit the statement made by the UMG Defendants in paragraph 50. Notwithstanding the foregoing, Plaintiffs submit that none of the other similarities between "Elevator" and "How We Do" occur in Westview's song. The structure of the chorus is completely different and the phrase "this is how we do" only occurs one single time and is not repeated, i.e. it is not an essential component of the song, in the way the sequence containing "this is how we do" is an essential part of "Elevator" and "How We Do."

E. **Allegedly Undisputed Differences Between Plaintiffs' Song and Defendants' Song**

51. Plaintiffs admit the statement made by the UMG Defendants in paragraph 51.

52. Plaintiffs deny the statement made by the UMG Defendants in paragraph 52, as the "this is how we do" phrase is intoned (Harrington Supplemental Report, pg. 6, attached to Adelman Decl. as Exhibit AA.)

53. Plaintiffs deny the statement made by the UMG Defendants in paragraph 53.

54. Plaintiffs deny the statement made by the UMG Defendants in paragraph 54, except that

55. Plaintiffs admit the statement made by the UMG Defendants in paragraph 55.

F. **Plaintiffs' Expert Allegedly Fails to Follow His Own Stated Methodology in Rendering His Opinion**

56. Plaintiffs admit the statement made by the UMG Defendants in paragraph 56.

57. Plaintiffs admit the statement made by the UMG Defendants in paragraph 57.

58.     Plaintiffs only admit that the statement is a partial paragraph and not the complete paragraph of page 2, paragraph 3 in Harrington's expert report.

59.     Plaintiffs admit the statement made by the UMG Defendants in paragraph 59, except that the citation is actually at McKinley Report at page 1-3.

60.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 60. Plaintiff's expert determined that the subject matter is not essential for the case at bar and insofar made the analysis that subject matter is not essential to the question of substantial similarity of the choruses of the two songs at issue.

61.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 61. Plaintiff's expert determined that tonality is not essential for the case at bar and insofar made the analysis that tonality is not essential to the question of substantial similarity of the choruses of the two songs at issue, and therefore did not include it in his report. (Transcript of Deposition of E. Michael Harrington ("Harrington Dep."), Movit Decl., Ex. G, 108:18 to 109:4).

62.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 62. Plaintiff's expert determined that the form is not essential for the case at bar and insofar made the analysis that form is not essential to the question of substantial similarity of the choruses of the two songs at issue, and therefore did not include it in his report. (Harrington Dep., 108:18 to 109:4).

63.     Plaintiffs deny the statement made by the UMG Defendants in paragraph 63. Plaintiff's expert determined that harmony is not essential for the case at bar and insofar made the analysis that tonality is not essential to the question of substantial similarity of the choruses of the two songs at issue, , and therefore did not include it in his report. (Harrington Dep., 108:18 to 109:4).

64. Plaintiffs deny the statement made by the UMG Defendants in paragraph 64. Plaintiffs object to the self-serving statement of the UMG Defendants and manifest that the Harrington Expert Report provides a complete analysis of the significant part of the rhyme schemes, lyrics, and melody of the songs at issue, i.e. a comparison of the Motives. (Harrington Dep., 88:6-9; 108:18 to 109:4).

65. Plaintiffs deny the statement made by the UMG Defendants in paragraph 65.

66. Plaintiffs deny the statement made by the UMG Defendants in paragraph 66. The report states that a prior musical sources search was conducted. (Report of Plaintiff's Expert Dr. Harrington ("Harrington Report"), p. 2, a true and correct copy of the Harrington Report is attached to the Adelman Decl. as Exhibit Y.)

67. Plaintiffs admit the statement made by the UMG Defendants in paragraph 67. Notwithstanding the foregoing, Plaintiffs submit that the McKinley report concerned a different song and case and the results of that expert report and testimony from such case cannot be simply analogized to the case at bar.

68. Plaintiffs admit the statement made by the UMG Defendants in paragraph 68. Notwithstanding the foregoing, Plaintiffs submit that the McKinley report concerned a different song and case and that isolated statements of the expert report and testimony from such case cannot be simply analogized to the case at bar.

69. Plaintiffs admit the statement made by the UMG Defendants in paragraph 69. Notwithstanding the foregoing, Plaintiffs submit that the McKinley report concerned a different song and case and that isolated statements of the expert report and testimony from such case cannot be simply analogized to the case at bar.

70. Plaintiffs admit the statement made by the UMG Defendants in paragraph 70.

71. Plaintiffs deny the statement made by the UMG Defendants in paragraph 71. Notwithstanding the foregoing, Plaintiffs submit that the deposition transcript does NOT say what the Defendants suggest that it does.

72. Plaintiffs admit the statement made by the UMG Defendants in paragraph 72.

### Plaintiffs' Additional Statements

73. "Elevator" was composed and recorded before "How We Do" was composed and recorded. (Adelman Decl. ¶ 70, See Exhibits C and G.)

74. Dr. Harrington thoroughly explored the similarities of the two compositions/recordings in the Harrington Report. (Adelman Decl., Exhibit Y.)

75. At the outset of his examination of the two songs, Dr. Harrington determined that both "How We Do" and "Elevator" are songs of the contemporary hip hop genre. (Adelman Decl. ¶ 73, Exhibit Y, Harrington Report, p. 2.)

76. Plaintiffs' expert then continued to survey the similarities of the two works, by listening to both tracks and examining, among other things the style, tempo, meter, pitch center, lyrics, motive, structure, and performance. (Adelman Decl. ¶ 74, Exhibit Y, Harrington Report, p. 2) He reached the following conclusions:

   (a) The two songs share many similar structural elements indicating that the creators of "How We Do" indeed intentionally copied from "Elevator." (Adelman Decl. ¶ 75, see Exhibit Y, Harrington Report p.1.)

   (b) In addition to the style of music, the two works are identical in tempo and meter. (Adelman Decl. ¶ 76, see Exhibit Y, Harrington Report p. 3)

   (c) The two songs also have a very close pitch center, as "Elevator" is centered around the pitch-class E flat and "How We Do" is centered around the pitch-class E

natural.  (Adelman Decl. ¶ 77, see Exhibit Y, Harrington Report p. 3)

(d) With respect to the lyrics of the two songs, the preeminent phrase of the lyrics of both songs is "this is how we do," and those lyrics are situated at the beginning of each chorus.  (Adelman Decl. ¶ 78, see Exhibit Y, Harrington Report p. 3)

(e) The motive of the two songs is substantially similar.  In context of structure, the motive of a composition is the most important and most recognizable element in a composition.  (Adelman Decl. ¶ 79, see Exhibit Y, Harrington Report p. 1,3)

(f) In "Elevator" consists of the lyric "this is how we do," sung to a specific five (5) note pattern consisting of at least five (5) quarter notes of two (2) quarter note triplets (hereinafter "Elevator's Motive.").  The motive in "How We Do" was identical to Elevator's Motive.  How We Do's motive consists of the lyric "this is how we do," sung to a specific five (5) note pattern consisting of at least five (5) quarter notes of two (2) quarter note triplets.  (Adelman Decl. ¶ 80, see Exhibit Y, Harrington Report p.  3.)

(g) Elevator's Motive occurs at the beginning of the chorus in both "Elevator" and "How We Do."  (Adelman Decl. ¶ 81, see Exhibit Y, Harrington Report p. 4.)

(h) Elevator's Motive occurs the same number, i.e. four (4) times, within the chorus of either of the songs. (Adelman Decl. ¶ 81, see Exhibit Y, Harrington Report p. 4.)

(i) The choruses of the songs are exactly twenty (20) seconds long in the first repetition and nineteen (19) seconds long in the second repetition, with Elevator's Motive being repeated four (4) times within each chorus. (See the Structural Charts of "How We Do" and "Elevator" in Dr. Ferrara's expert report ("Ferrara Report"), p.6, and Adelman Decl. ¶ 82, Exhibit Z.)

Dated:     June 10, 2010
           New York, New York

                                          ROBINSON BROG LEINWAND GREENE
                                              GENOVESE & GLUCK P.C.


                                        By: _____/s/_____
                                        Gary Adelman (GA7138)
                                        Daniel Zohny (DZ7311)
                                        Attorneys for Plaintiff
                                        875 Third Avenue
                                        New York, New York 10022
                                        Tel: (212) 603-6300